# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHELLE FRANCIONE, individually and on behalf of all others similarly situated, | x : : Case No. : : : |
| Plaintiff, | : **CLASS ACTION** |
| v. | : **COMPLAINT** : : **JURY TRIAL DEMANDED** |
| KRAFT HEINZ FOODS COMPANY | : : : |
| Defendant. | : x |

Plaintiff, Michelle Francione (hereinafter "Plaintiff"), brings this action individually and on behalf of all others similarly situated against Defendant Kraft Heinz Foods Company ("Kraft" or "Defendant") for making, processing, manufacturing, marketing, distributing and selling its Kraft Macaroni & Cheese products (hereinafter, the "Products" or "Kraft Mac & Cheese Products"). Plaintiff asserts the following allegations pursuant to the investigation by her counsel and based upon information and belief, except as to the allegations pertaining to herself, which are based on personal knowledge:

## NATURE OF THE ACTION

1.     This class action concerns the presence of harmful chemicals known as ortho-phthalates ("phthalates") in Defendant's popular Macaroni & Cheese products (i.e., the Products).

2.      For years, Defendant has been aware that its Products contain phthalates but has refused to take steps to remove these chemicals even though removal is possible using practical and good manufacturing practices.

3.      Phthalates are classified as endocrine-disrupting chemicals and have been linked to adverse health effects as described below.

4.      Reasonable consumers, like Plaintiff, trust manufacturers like Defendant to manufacture, make, process, distribute and sell food that is healthy, nutritious, and free from harmful toxins, contaminants, and chemicals.

5.      Reasonable consumers, like Plaintiff, expect that the food they eat and feed their family will be free from phthalates, substances known to have adverse health consequences.

6.      Consumers lack the scientific knowledge necessary to determine whether the Products do in fact contain (or have a risk of containing) phthalates, or other undesirable toxins or contaminants, or to ascertain the true nature of the ingredients and quality of the Products. Reasonable consumers therefore must and do rely on Defendant to be transparent and not affirmatively misrepresent the true quality of the Products.  However, public reports and articles, including in the recesses of Defendant's own website, reveal that the Kraft Mac & Cheese Products contain (or are at risk of containing) phthalates.

7.      Plaintiff brings this class action against Defendant for breach of warranty and unjust enrichment, regarding the presence (or risk) of dangerous phthalates in the Kraft Mac & Cheese Products, including those that Plaintiff purchased.  Plaintiff seeks injunctive and monetary relief on behalf of the proposed Class including (i) requiring testing of all ingredients and final Products for such substances; (ii) removal of false and misleading statements and representations on the Products' packaging as described below; and (iii) restoring monies to the members of the

proposed Class.  Plaintiff intends to amend this complaint to add a claim pursuant to M.G.L. c. 93A should Defendant fail to timely and meaningfully and fully offer to resolve this matter as to the proposed class.

## **PARTIES**

8.     Plaintiff Michelle Francione is, and at all times relevant to this action has been, a resident of North Andover, Massachusetts.  On several occasions during the last three years, including within the last several months, Plaintiff purchased Kraft Macaroni & Cheese from a Market Basket store located in North Andover, Massachusetts.  Specifically, among Plaintiff's purchases of Products in the last several months, Plaintiff made purchases of two types of Kraft Macaroni & Cheese Products ("Plaintiff's Product") from a Market Basket grocery store in North Andover, Massachusetts.  The first purchase consisted of two boxes of Kraft EZ MAC CUP 3CH at a purchase price of $ 1.99 per box. The second purchase consisted of four boxes of KRAFT MAC&CHEESE BOWL ORIGINAL at a price of $ 2.39 per box.

9.     Had Plaintiff known of the existence of the unsafe and dangerous levels of phthalates in Defendant's Products, she would not have purchased any of the Products, or at the very least, would have paid significantly less for them.  After learning of the presence of phthalates in the Products, Plaintiff stopped purchasing the Products.  However, Plaintiff regularly visits stores where Defendant's Products are sold and remains interested in purchasing safe macaroni and cheese products.  She would purchase Defendant's Products in the future if Defendant removed the phthalates.

10.     Defendant Kraft Heinz Foods Company is a Pennsylvania-organized entity with its principal place of 1 PPG Place, Suite 3400, Pittsburgh, PA.  Defendant makes, processes,

manufactures, markets, and distributes and sells the Products throughout the United States including in Massachusetts.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

12.    This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within Massachusetts such that Defendant has significant, continuous, and pervasive contacts within Massachusetts.

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District, a substantial part of the events giving rise to Plaintiff's claims took place within this District because Plaintiff purchased one or more of the Products in this District and was therefore injured in this District.

## COMMON FACTUAL ALLEGATIONS

### Background on Phthalates

14.    Phthalates are synthetic chemicals used to make plastics flexible.

15.    Phthalates are dangerous and harmful chemicals when consumed, especially by pregnant women and children.

16.    Phthalates can migrate into food products during processing, packaging, and preparation.  Although not intentionally added to food, phthalates are "indirect" food additives.

because they escape from food contact materials, including processing equipment, such as plastic

tubing and conveyor belts, as well as food packaging materials.  When added to these materials

as plasticizers, phthalates shed onto anything that they touch, such as food products because they

are not chemically bound to the plastics and vinyl.

17.     Because phthalates bind with fats, they tend to be found at higher levels in highly

processed or fatty foods, such as the Products.

18.     It is not necessary to use phthalates in the processing and packaging of Defendant's

Products and the use of phthalates can be avoided entirely by Defendant through the use of good

manufacturing practices.

19.     Within the scientific community, phthalates are called "endocrine disruptors"

because they affect the body's hormones by mimicking them or blocking them.  Specifically,

they interfere with the body's natural levels of estrogen, testosterone, and other hormones, which

is why they are called "disruptors."

20.     In the past few years, researchers have linked phthalates to asthma, attention-deficit

hyperactivity disorder, breast cancer, obesity and type II diabetes, low IQ, neurodevelopmental

issues, behavioral issues, autism spectrum disorders, altered reproductive development and male

fertility issues.[1]

21.     Even short-term exposure to phthalates has now been linked to developmental

deficits.  Researchers have found that children in intensive care units who were exposed to the

phthalates through plastic tubing and catheters had 18 times as much of the chemicals in their

blood compared to children who had not spent time in the ICU.  Four years later, the children

who had been exposed to the phthalates had more problems with attention and motor

---

[1] https://www.theguardian.com/lifeandstyle/2015/feb/10/phthalates-plastics-chemicals-research-analysis.

coordination.  The researchers found that the phthalates caused these problems regardless of medical complications or treatments.

22.    As of February 2009, children's toys and child care products sold in the U.S (such as teething rings and plastic books) cannot contain certain phthalates.  The ban on those phthalates is the result of a law passed in 2008, the Consumer Product Safety Improvement Act.  The law permanently banned these phthalates.

23.    In 2006, the European Union banned the use of certain phthalates in toys that may be placed in the mouth by children younger than 3 years old.  Fourteen other countries, including Japan, Argentina, and Mexico, had also banned phthalates from children's toys prior to the U.S.

24.    It appears that the Food and Drug Administration ("FDA") has not adopted a standard for acceptable levels of phthalates in food.

**Phthalates Are Toxic Industrial Chemicals Found in Boxed Macaroni and Cheese**

25.    In 2017, the Coalition for Safer Food Processing and Packaging (the "Coalition"), a group of nonprofit consumer health and food safety advocacy organizations, published a study (the "Study") that tested, among other cheese products, cheese powder in ten varieties of macaroni and cheese.[2]  The Study concluded that phthalates were found in all 10 of the varieties and that on average the phthalate levels in the ten macaroni and cheese powders tested were **more than four times higher** than in the 15 natural cheeses  tested, which were block cheese, string cheese, cottage cheese, and shredded cheese.[3]  The Study also concluded that

---

[2] *See* http://kleanupkraft.org/data-summary.pdf (last accessed June 1, 2021).
[3] *See* PhthalatesLabReport.pdf (kleanupkraft.org) (last accessed June 1, 2021).

"DEHP, the most widely restricted phthalate, was found more often and at a much higher average concentration than any other phthalate, among all the cheese products tested."[4]

26.    Although the Study did not publicly identify the brands for which the cheese powder was tested, given the results of the Study, the Coalition wrote a public letter dated June 14, 2017 to the Chief Executive Officer of Kraft, asking that [Defendant], as the leading U.S. seller of macaroni and cheese products, to "eliminate toxic industrial chemicals known as *ortho*-phthalates from your food products."[5]  According to the letter, the Coalition stated that it had detected phthalates in Kraft's products through the testing and wanted to meet with Kraft to discuss this as it was planning a public outreach campaign.[6]  The letter stated that pregnant women and young children are the "most vulnerable groups" and that food is "often the number one source of phthalates exposure."[7]  Fatty foods, including dairy products, appears to be "the greatest contributor of dietary exposure to phthalates," according to the letter.[8]  The Coalition explained and cited the scientific findings to date showing that pre-natal exposure to phthalates is highly dangerous to the fetus and leads to multiple harms once the children are born, including neurodevelopmental problems such as ADHD, anti-social behavior, learning and

---

[4] http://kleanupkraft.org/data-summary.pdf (last accessed June 1, 2021).  *See also* Report to the U.S. Consumer Product Safety Commission by the Chronic Hazard Advisory Panel on Phthalates and Phthalate Alternatives, July 2014, U.S. Consumer Product Safety Commission, Directorate for Health Sciences, https://www.cpsc.gov/s3fs-public/CHAP-REPORT-With-Appendices.pdf (last accessed June 1, 2021), at 90 (CPSC states that regarding DEHP, which is not allowed in children's toys and child care products at levels greater than 0.1%, "[a] complete dataset suggests that exposure to DEHP in utero can induce adverse developmental changes to the male reproductive tract. Exposure to DEHP can also adversely affect many other organs such as the liver and thyroid.").

[5] http://kleanupkraft.org/kraft-phthalates-6-14-17.pdf (last accessed June 1, 2021).

[6] *See id.*

[7] *Id.*

[8] *Id.*

memory problems, and genital birth defects in boys.[9]  Moreover, the letter stated that cumulative exposure to phthalates is of particular concern and that "safer alternatives are already commercially available for many uses of phthalates."[10]

27.    In the Frequently Asked Questions portion of Defendant's website, Defendant acknowledged the Study, that its Kraft Mac & Cheese Products do contain (or risk containing) phthalates, and that it is important to "reduce or eliminate" such phthalates.[11]

28.    On information and belief, in a recent letter, dated March 11, 2020, addressed to the Chief Executive Officer of The Kraft Heinz Company, which included signatories from disability organizations from 22 states, the chair of Harvard's Department of Environmental Health, and public health experts from several additional universities, disclosed to the CEO that the "National Academy of Sciences estimates that environmental factors, including toxic chemicals, cause or contribute to at least a quarter of learning and developmental disabilities in American children," and that Kraft should lead the industry "by ensuring its supply chain is free of phthalates."  On information and belief, the letter further stated that "[s]cientific studies show that daily cumulative exposure to phthalates poses an unacceptable health risk to pregnant women and young children.  Elevated phthalate exposure has been found to interfere with the reproductive functions of both men and women and impede brain development in children.  For most people, the food we eat is the greatest exposure pathway to phthalates.  Foods that are fattier and more processed tend to have the highest phthalate levels."

29.    Studies in addition to those noted above indicate and/or discuss the harmful and dangerous effects of phthalates.  For example, a study in 2014 sought to identify the primary

---

[9] *See id.*
[10] *See id.*
[11] https://www.kraftmacandcheese.com/faq (last accessed June 1, 2021).

foods associated with increased exposure to phthalates. The study stated, "Given the increasing scientific evidence base linking phthalate exposure with harmful health outcomes, it is important to understand major sources of exposure."[12] Dairy was found to be one of those sources. According to the study, phthalates "are classified as endocrine-disrupting chemicals and have been linked to adverse health effects particularly in relation to early life exposure." The study further noted that in "adult populations, various epidemiological studies support an association between phthalate exposure and markers of testicular function in men, particularly decreased semen quality." It also noted that "evidence linking endometriosis in women with high phthalate metabolite levels" and "[i]ncreases in waist circumference and body mass index (BMI) have been linked to DEHP, BzBP, DBP and DEP exposure in men and DEP exposure in adolescent and adult females."[13]

30.     Another study in 2014, which "examined the temporal trends in urinary concentrations of phthalates metabolites in the general U.S. population," also indicated that such testing was important due to "the scientific community and public's concern over phthalate toxicity," including the banning of the use of certain phthalates in toys, food-containing materials, and cosmetics in the European Union, as well as toys and other child care articles in the U.S.[14] The study noted: "Human epidemiologic studies have reported associations between exposure to DnBP, BBzP, and some other phthalates and adverse male reproductive outcomes, including

---

[12] Serrano SE, Braun J, Trasande L, Dills R, Sathyanarayana S (2014) Phthalates and diet: a review of food monitoring and epidemiology data. Environmental Health 13:43, https://ehjournal.biomedcentral.com/articles/10.1186/1476-069X-13-43 (last accessed June 1, 2021).
[13] *Id.*
[14] Zota AR, Calafat AM, Woodruff TJ (2014) Temporal Trends in Phthalate Exposures: Findings from the National Health and Nutrition Examination Survey, 2001-2010 Environmental Health Perspectives 122(3):235-241, https://ehp.niehs.nih.gov/doi/10.1289/ehp.1306681 (last accessed June 1, 2021).

reduced sperm quality, increased sperm DNA damage, and altered male genital development (Hauser et al. 2006, 2007; Meeker et al. 2009; Swan et al. 2005).  Other studies have reported associations between gestational exposures to phthalates, including DEP, DnBP, BBzP, and DEHP, and outcomes suggesting impaired behavioral development (Braun et al. 2013; Engel et al. 2009; Swan et al. 2010; Whyatt et al. 2012)."[15]

### **Defendant's Knowledge and Material Misrepresentations Regarding Phthalates**

31.   Defendant has known for at least four years that its Products contain dangerous phthalates which have been shown to be harmful to health, including to pregnant women and children, particularly on a cumulative basis, while falsely and deceptively touting its Products as healthy, wholesome and nutritious.

32.   Defendant's packaging for Kraft Mac & Cheese Products represents and promises that the Products are "The Taste You Love" as they have "NO Artificial Flavors" and "NO Artificial Preservatives" and "NO Artificial Dyes."  These representations and promises leads reasonable consumers to believe a Product is wholesome and healthy and does not contain dangerous chemicals like phthalates.

33.   But phthalates are toxic industrial chemicals that are far from wholesome or healthy.  While Defendant prominently represents on the front of the package that there are "NO" "artificial" flavors, preservatives or dyes in the Kraft Mac & Cheese Products, the Products contain dangerous and harmful phthalates.

34.   None of these promises, statements and representations on the consumer-facing packaging of the Products is required by federal or state law, but rather all were chosen

---

[15] *Id.*

voluntarily by Defendant to advertise and represent the Products as safe and healthy to consumers.

35.    On the "Frequently Asked Questions" section of the kraftmacandcheese.com website, under the question, "Should I be concerned about food and phthalates?," Defendant states that it "know[s] moms and dads trust Kraft Mac & Cheese as a quality, tasty, and safe food for the family."[16] Thus, it acknowledges reliance by its customers on its representations that the Kraft Mac & Cheese Products are healthy and safe to eat and free from dangerous chemicals. Defendant further acknowledges that phthalates are found in many food products and states that Defendant is working to learn how "phthalates may be introduced into certain products and if there is anything else we can do to reduce or eliminate them."[17] While the statements on the kraftmacandcheese.com website are buried in the Frequently Asked Questions section, they are nonetheless an admission by Defendant that it is information a reasonable consumer would consider important, yet Defendant misrepresents on Product labeling that the Products are healthy and contain no artificial flavors, preservatives or dyes.

36.    The Products' affirmative misrepresentations are illustrated by the picture of the Kraft Mac & Cheese Product shown below.

---

[16] https://www.kraftmacandcheese.com/faq (last accessed June 1, 2021).
[17] *Id.*



37.    Defendant's website confirms the misrepresentations made to consumers, including Plaintiff and the Class, on the packaging of Kraft Mac & Cheese Products that such Products are healthy, wholesome and nutritious and free from dangerous chemicals.  Defendant states on the website that its Kraft Mac & Cheese Products are "[t]he part of parenting that's impossible to mess up" and that is "[b]ecause Kraft Mac & Cheese is made with no artificial flavors, preservatives, and dyes."[18]

38.    Based on Defendant's decision to advertise and market its Kraft Mac & Cheese Products on its packaging as healthy, nutritious, and safe for consumption, it had a duty to ensure that these and other statements were true and not misleading, which it failed to do.

---

[18] https://www.kraftmacandcheese.com/ (last accessed June 1, 2021).

## CLASS ACTION ALLEGATIONS

39.     Pursuant to the provisions of Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal

Rules of Civil Procedure, Plaintiff brings this class action on behalf of herself and a Class defined

as:

> **All persons who, during the applicable statute of limitation period to the date that the class is certified, purchased Kraft Mac & Cheese Products in the Massachusetts for personal and/or household use, and not for resale (the "Class").**

40.     The Class excludes Defendant, any parent companies, subsidiaries, and/or

affiliates, officers, directors, legal representatives, employees, coconspirators, all governmental

entities, and any judge, justice, or judicial officer presiding over this matter.

41.     Certification of Plaintiff's claims for class-wide treatment is appropriate because

all elements of Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) are satisfied.   Plaintiff can prove the

elements of her claims on a class-wide basis using the same evidence as would be used to prove

those elements in an individual action alleging the same claims.

42.     **Numerosity:**   All requirements of Fed. R. Civ. P. 23(a)(l) are satisfied.   The

members of the Class are so numerous and geographically dispersed that individual joinder of all

Class members is impracticable.   While Plaintiff is informed and believes that there are thousands

of members of the Class, the precise number of Class members is unknown to Plaintiff.   Plaintiff

believes that the identity of Class members is known or knowable by Defendant or can be

discerned through reasonable means.   Class members may be identified through objective means.

Class members may be notified of the pendency of this action by recognized, Court-approved

notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings,

and/or published notice.

43.   **Commonality and Predominance:**  All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied.   This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, but not limited to:

a.   whether Defendant engaged in the deceptive and misleading business practices alleged herein;

b.   whether the misrepresentations by Defendant were likely to deceive a reasonable consumer;

c.   whether Defendant knew or should have known that the Kraft Mac & Cheese Products contain (or risk containing) dangerous phthalates;

d.   whether Defendant misrepresented and continues to misrepresent that the Kraft Mac & Cheese Products are healthy, nutritious, wholesome, and safe for consumption when such products contain (or risk containing) dangerous phthalates;

e.   whether Defendant breached its warranties to Plaintiff and the Class;

f.   whether Defendant caused the Products to be misbranded under M.G.L. c. 94, § 187;

g.   whether the misrepresented facts are material to a reasonable consumer;

h.   whether Defendant has been unjustly enriched by reason of its acts and omissions complained of herein;

i.   whether Plaintiffs and members of the Class are entitled to declaratory and injunctive relief pursuant to M.G.L. c. 266, §91 or otherwise within the proper equitable jurisdiction of the Court; and

k. whether Plaintiffs and members of the Class are entitled to damages and, if so, the measure of such damages.

44.    **Typicality:** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiff is a member of the Class, having purchased for personal/household use Kraft Mac & Cheese Products that were made, processed and/or manufactured by Defendant. Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendant's conduct.

45.    **Adequacy of Representation:** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiff is an adequate Class representative because she is a member of the Class and her interests do not conflict with the interests of the other members of the Class that she seeks to represent. Plaintiff is committed to pursuing this matter for the Class with the Class' collective best interests in mind. Plaintiff has retained counsel competent and experienced in complex class action litigation of this type and Plaintiff intends to prosecute this action vigorously. Plaintiff, and her counsel, will fairly and adequately protect the Class' interests.

46.    **Predominance and Superiority:** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiff's individual cases will also resolve them for the Class' claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful

conduct.  Even if Class members could afford individual litigation, the court system could not.

Individualized litigation creates a potential for inconsistent or contradictory judgments and

increases the delay and expense to all parties and the court system.  By contrast, the class action

device presents far fewer management difficulties and provides the benefits of single

adjudication, economies of scale, and comprehensive supervision by a single court.

47.     **Cohesiveness:**  All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied.  Defendant has

acted, or refused to act, on grounds generally applicable to the Class making final

declaratory or injunctive relief appropriate.

## COUNT I

### (Breach of Implied Warranty Under Massachusetts Commercial Code M.G.L. c. 106 § 2-314, M.G.L. c. 106 § 2-315, and M.G.L. c. 106 § 2-318)
### (On Behalf of Plaintiff and the Class)

48.     Plaintiff incorporates by reference the foregoing paragraphs of the Complaint as if fully

stated herein.

49.     Plaintiff bring this claim individually and on behalf of the members of the proposed Class

against Defendant.

50.     Under the Massachusetts Uniform Commercial Code M.G.L. c. 106 § 2-101 et. seq.

("Mass. UCC"), including M.G.L. c. 106 §§ 2-314, 2-315 and 2-318, every sale of consumer

goods in Massachusetts is accompanied by both a manufacturer's and retail seller's implied

warranty that the goods are merchantable, as defined in the Mass. UCC.  In addition, every sale

of consumer goods in Massachusetts is accompanied by both a manufacturer's and retail

seller's implied warranty of fitness when the manufacturer or retailer has reason to know that

the goods as represented have a particular purpose and that the buyer is relying on the

manufacturer's or retailer's skill or judgment to select or furnish suitable goods consistent with that represented purpose.

51.   The Products at issue here are "consumer goods" within the meaning of the Mass UCC.

52.   Plaintiff and the Class members who purchased one or more of the Products are "retail buyers" within the meaning of the Mass UCC.

53.   Defendant is in the business of making, processing, manufacturing, producing and/or distributing the Products to retail buyers, and is therefore a "manufacturer" and "seller" within the meaning of the Mass UCC.

54.   Defendant impliedly warranted to retail buyers that the Products were merchantable in that they would: (a) pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Products are used.  For a consumer good to be "merchantable" under the Mass UCC, it must satisfy both of those elements.

55.   Defendant breached the implied warranties because the Products were unsafe and defective.  Therefore, the Products would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used.

56.   Plaintiff and Class members purchased the Products in reliance upon Defendant's skill and judgment in properly packaging and labeling the Products.

57.   The Products were not altered by Plaintiff or Class members.

58.   The Products were defective at the time of sale when they left the exclusive control of Defendant.  The defect described in this complaint was latent in the product and not discoverable at the time of sale.

59.    Defendant knew that the Product would be purchased and used without additional testing by Plaintiff and Class members.

60.    As a direct and proximate cause of Defendant's breach of the implied warranties, Plaintiff and Class members have suffered economic harm because they would not have purchased the Products, or at a minimum would have purchased them at a lesser price than they did, had they known the truth about the Products; namely, that they contained harmful chemicals known as phthalates.

**COUNT II**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members, *in the Alternative*)**

61.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62.    Plaintiff, on behalf of herself and the Class, in the alternative, brings a claim for unjust enrichment.

63.    Defendant's conduct violated, *inter alia*, state law of Massachusetts by manufacturing, advertising, marketing, and selling its Products while misrepresenting material facts and by furnishing unsuitable Products to the Class Members.

64.    Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members and to Defendant's benefit and enrichment.  Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

65.    Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Products, which were not as Defendant represented them to be.

66.    Under Massachusetts' common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiff and Class Members' overpayments.

67.    Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Fed. R. Civ. P. 23 and appointing Plaintiff's counsel as counsel for the Class;

(b) Awarding monetary statutory and common law damages in an amount to be determined at trial;

(c) Awarding punitive damages;

(d) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(e) Granting such other and further relief as the Court may deem just and proper.

Dated: June 3, 2021

                                    **THE LAW OFFICES OF EDWARD L.**
                                    **MANCHUR, P.C.**

                                    By:
                                        /s/ Edward L. Manchur
                                    _____
                                     Edward L. Manchur, Esq. (BBO # 316910)
                                     P.O. Box 3156
                                     Peabody, Massachusetts 01960
                                     Tel: (978) 333-1013
                                     manchurlaw@gmail.com

                                    *Counsel for Plaintiff and the Proposed Class*

21